## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MARYLAND

| | |
|---|---|
| **CHRISTOPHER PUGH** **LINDSEY PUGH** 7285E Coachlight Court Frederick, MD 21703 *On Their Behalf and on Behalf of a Class of Persons Similarly Situated* **Plaintiffs,** **v.** **SELENE FINANCE LP** Suite 400 9990 Richmond Avenue Houston, TX, 77042 **Defendant** | **Case No. 15-712** **JURY TRIAL DEMAND** |

_____

### CLASS ACTION COMPLAINT

Plaintiffs Christopher and Lindsey Pugh ("Mr. & Mrs. Pugh" or "The Pughs" or "Named Plaintiffs"), by their attorneys, Phillip Robinson and CONSUMER LAW CENTER LLC, hereby file this Class Action Complaint against Defendant Selene Finance LP ("Selene") and state as follows:

### I.  INTRODUCTION

1.     In these instances, such as the underlying matter involving Selene, the servicers place their interest above that of the homeowner and unfairly and deceptively ignore their statutory and contractual duties including those which were

agreed to as part of their license to legally operate in the State of Maryland and nationwide.

2.      These practices are compounded when homeowners, like Mr. & Mrs. Pugh and the putative classes in this case (defined in ¶¶ 44-46, referenced hereinafter as "RESPA Class" and "ECOA Class"), try in good faith to resolve their situation and apply for a loan modification but the servicer, i.e. Selene, simply ignores their applications and fails to respond whatsoever except to ignore the credit applications and seeks instead to proceed to foreclosure. After their reasonable efforts to mitigate and resolve their mortgage situations are ignored, homeowners such as the Plaintiffs and Class and Subclass Members are left with no other options but to seek the assistance of the Courts.

3.      The subject practices involved in this action include: (i) Selene's failure to properly acknowledge and respond to borrower applications for loan modifications incompliance with the mandatory requirements of (i) 12 C.F.R. § 1024.41(b) pursuant to 12 U.S.C.A. § 2605(k)(1)(E); (ii) 15 U.S.C §1691(d)(1); and (iii) Md. Code Regs. 09.03.06.20(A).

4.      Had Selene performed the basic services required of mortgage servicers nationwide and Maryland licensed mortgage servicers in acknowledging and considering loss mitigation applications from borrowers like Mr. & Mrs. Pugh and the RESPA Class and ECOA Class members who have provided it valid and complete applications to resolve their mortgage situation but have simply been ignored by Selene, this action would not be necessary.

5.     In this action, Mr. & Mrs. Pugh and the RESPA Class and ECOA Class members are seeking statutory damages and losses and limited actual damages.  In addition, all have been harmed by the needless delays caused by Selene simply ignoring their applications while assessing their mortgage accounts with late fees and other costs to which Selene will claim a percentage when it collects directly or indirectly.  All have suffered needless anxiety and stress by Selene's delays and continuing threats of foreclosure without having even acknowledged and considered the borrowers' application(s).

## II.     JURISDICTION AND VENUE

6.     This Court has jurisdiction pursuant to 28 U.S.C.A. § 1331 since certain of the claims asserted herein arise under the laws of the United States. Further, the Court may elect to retain supplemental jurisdiction over the state law claims pursuant to 28 U.S.C.A. § 1367 since those claims are so related to the federal claims asserted herein that they form part of the same case and controversy.  The Pughs and ECOA Class and RESPA Class are also entitled to declaratory relief.

7.     This Court has jurisdiction asserted because Defendant transacts business, performs work, has interests in real property, and provides services in Maryland.

8.     Venue is appropriate in this Court pursuant to 28 U.S.C.A. § 1391 because a substantial portion part of the events or omissions giving rise to the claims before the Court, related to the Named Plaintiffs, occurred in this District.

### III.   PARTIES

9.      Plaintiffs Christopher and Lindsey Pugh ("Mr. & Mrs. Pugh" or "Named Plaintiffs") are residents of Frederick County, Maryland and reside at 7285 E Coachlight Court in Frederick, MD 21703 (the "Property").  They reside at the Property with their four children.

10.     Defendant Selene Finance LP ("Selene") is a mortgage lender and servicer that regularly conducts business throughout the United States and in Maryland. Selene has acted as the mortgage servicer of Mr. & Mrs. Pugh's loan since 2014.  Selene is also a licensed Maryland mortgage servicer (Lic. No. 15211). Selene's registered agent in the state is The Corporation Trust Incorporated, 351 West Camden Street, Baltimore, MD  21201

### IV.   FACTS

#### A.   THE FORECLOSURE & MORTGAGE CRISIS

11.     Over the last six years, Maryland and the United States have been in the midst of a foreclosure crisis. News reports have established that one in ten American homes is at risk of foreclosure.  In response to this crisis and the factors that led to it, the Maryland General Assembly and the Maryland Governor have enacted and signed into law a number of new protections and requirements for so-called mortgage professionals and others involved in the mortgage lending process.

12.     The Court of Appeals has held that in light of these "public policy statements as exemplified by its recent enactments…a stricter adherence to the rules of procedure in mortgage foreclosure sales of residential property is required."

*Maddox v. Cohn*, 424 Md. 379, 393, 36 A.3d 426, 434 (2012). The same strict adherence applies to certain mortgage servicing practices subject to this action as well.

### B. THE DEFENDANT'S LEGAL DUTIES RELATED TO THE SUBJECT TRANSACTION(S) OF THIS COMPLAINT

13. Selene owes a duty of care to the Named Plaintiffs and RESPA Class pursuant to 12 U.S. C. § 2605 and Reg. X, 12 C.F.R. § 1024.35.

14. Under the Maryland common law, Selene also owes the Named Plaintiffs and ECOA Class, as discussed *infra*, a duty of care due to the 'intimate nexus' which exists between the Plaintiff and Subclass on the one hand and the Defendant, a licensed real estate professional, on the other. This 'intimate nexus' arises from the relationship between lay customers and the licensed professional Defendant, characterized by the Named Plaintiffs' and ECOA Class' reliance upon the accuracy of the professional's services to them. *See 100 Investment Limited Partnership v. Columbia Town Center Title Co.*, 60 A.3d 1 (2013); *Jacques v. First Nat'l Bank of Md.*, 307 Md. 527 (1986).

15. As a licensed Maryland mortgage lender, Selene volunteered and agreed to accept as a condition of its license a "duty of good faith and fair dealing in communications, transactions, and course of dealings with a borrower in connection with the advertisement, solicitation, making, servicing, purchase, or sale of any mortgage loan" to include a duty to "promptly" provide borrowers with an accounting of their loan when requested and to have "trained" employees on staff

to "promptly answer and respond to borrower inquiries."    Md. Code Regs. 09.03.06.20. Named Plaintiffs and the ECOA Class members are third party beneficiaries of Selene's duty under Md. Code Regs. 09.03.06.20.

### C.    BACKGROUND ON THE DEFENDANT AND ITS MORTGAGE SERVICING BUSINESS

16.    Selene was founded in 2007 as a residential mortgage company with the plan to concentrate on the delinquent, mortgage market.    Selene is owned by Selene Ventures LLC and Selene Ventures GP LLC. Selene Holdings LLC is the parent company. Selene's servicing operation is headquartered in Houston TX, with additional servicing sites in Horsham PA and Jacksonville FL.

17.    According to published reports, as of Sept. 30, 2014, Selene serviced over 92,000 loans with an unpaid principal balance (UPB) of over $14 billion. The value of these servicing rights exceeds $50,000,000.00.

18.    Selene has also developed a niche market representing unlicensed mortgage collection agencies and debt collectors who have acquired mortgage debts from more traditional mortgage lenders at a steep discount (i.e. pennies on the dollar).  These debt collectors then rely and delegate to Selene by way of various servicing contracts all the customer contacts related to the residential loans they have acquired in default.  As a result of its business model, Selene is also a debt collector because it has primarily acquired the servicing rights of mortgage loans that are in default with the result that most properties are liquidated through foreclosure, short sales, and deeds lieu of foreclosure.

D.   **THE CONSUMER FINANCIAL PROTECTION BUREAU'S RESPONSE TO MORTGAGE CRISIS THROUGH REGULATION X RELEVANT TO THIS ACTION**

19.   Congress has enacted a provision of the Real Estate Settlement Procedures Act, 12 U.S.C.A. § 2605 ("RESPA"), that governs the servicing of federally related, mortgage loans.  Each loan subject to this action and the servicing violations alleged herein relate of it is a federally related loan as defined by the criteria in 12 U.S.C.A. § 2602(1).

20.   In the DODD–FRANK WALL STREET REFORM AND CONSUMER PROTECTION ACT, PL 111-203, July 21, 2010, 124 Stat 1376 ("Dodd-Frank"), Congress transferred broad regulatory authority under RESPA to the Consumer Financial Protection Bureau ("CFPB").   "Congress [also] amended RESPA to provide greater protection for borrowers who have fallen behind on their mortgage payments. *See* Dodd–Frank, Pub.L. No. 111–206, 124 Stat. 1375, § 1463 (2010)."  *Lucas v. Ocwen Home Loan Servicing*, No. 3:13-CV-1057-G, 2014 WL 7059274, at *4 (N.D. Tex. Nov. 21, 2014) report and recommendation adopted, No. 3:13-CV-1057-G BH, 2014 WL 7146033 (N.D. Tex. Dec. 12, 2014).

21.   Specifically, one of the major general objectives addressed by the CFPB's RESPA regulations implementing Dodd-Frank's objectives required Servicers like Selene

> to follow specified loss mitigation procedures for a mortgage loan secured by a borrower's principal residence. If a borrower submits an application for a loss mitigation option, the servicer is generally required to acknowledge the receipt of the application in writing within five days and inform the borrower whether the application is complete and, if not, what information

7

is needed to complete the application. The servicer is required to exercise reasonable diligence in obtaining documents and information to complete the application.

Mortgage Servicing Rules under the Real Estate Settlement Procedures Act (Regulation X), 78 FR 10696-01.  Also available at

http://files.consumerfinance.gov/f/201301_cfpb_final_rule_servicing-respa-preamble.pdf on Page 9.

22.     This objective to respond to a borrower application within five days was codified by the CFPB in 12 C.F.R. § 1024.41(b) (i) (B).

23.     Mortgage servicers, including Selene, who do not timely review loss mitigation applications needlessly create a cycle of frustration and needless duplication because they know that many of the documents requested are time sensitive and may become stale and need to be updated if the servicer does not review them in a timely manner. By failing to timely review loss mitigation applications as required by Federal law and regulations, Selene is simply creating a system of churning application after application.

24.     The CFPB's regulation also determined that "borrower[s] may enforce the provisions of [12 C.F.R. § 1024.41] pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))".

E.     THIS COURT AND OTHERS AROUND THE COUNTRY, AS WELL AS THE ADMINISTRATIVE AGENCIES RESPONSIBLE FOR ECOA ENFORCEMENT HAVE ALL DETERMINED THAT ECOA'S PROTECTIONS APPLY TO BORROWERS APPLYING FOR LOAN MODIFICATIONS

25.     The ECOA has been recognized as a remedial statute. *Citgo Petroleum Corp. v. Bulk Petroleum Corp.,* 08-CV-654-TCK-PJC, 2010 WL 3212751 (N.D. Okla. Aug. 12, 2010); *Shaumyan v. Sidetex Co., Inc.,* 900 F.2d 16, 18 (2d Cir. 1990); *McPherson v. Comerica Bank,* 93-CV-70261-DT, 1993 WL 939366 (E.D. Mich. Dec. 8, 1993).

26.     ECOA in this matter requires "[w]ithin thirty days...after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application." 15 U.S.C.A. § 1691(d) (1).

27.     The Seventh Circuit Court of Appeals has explained the

> Congress described this requirement as a strong and necessary adjunct to the anti-discrimination purpose of the legislation, for only if creditors know they must explain their decisions will they effectively be discouraged from discriminatory practices. Yet this requirement fulfills a broader need: rejected credit applicants will now be able to learn where and how their credit status is deficient and this information should have a pervasive and valuable educational benefit. Instead of being told only that they do not meet a particular creditor's standards, consumers particularly should benefit from knowing, for example, that the reason for the denial is their short residence in the area, or their recent change of employment, or their already over-extended financial situation. In those cases where the creditor may have acted on misinformation or inadequate information, the statement of reasons gives the applicant a chance to rectify the mistake.

*Fischl,* 708 at 146 (quoting 147 S.Rep. No. 94-589, 94th Cong., 2d Sess.,  *reprinted in* 1976 U.S. Code Cong. & Admin. News, pp. 403, 406).

28.     In sum, the ECOA notice requirement serves two purposes: it discourages discrimination and it educates consumers as to the deficiencies in their

credit status. *Treadway v. Gateway Chevrolet Oldsmobile Inc.*, 362 F.3d 971, 977 (7th Cir. 2004).

29.     The accompanying Regulation B, issued by the Board of Governors of the Federal Reserve System pursuant to ECOA, further provides: "A creditor shall notify an applicant of action taken within…30 days after receiving a completed application concerning the creditor's approval of, counteroffer to, or adverse action on the application." 12 C.F.R §202.9(a)(1)(i).

30.     There are many cases involving factually similar situations as that presented by Named Plaintiffs in this action, including those of this Court, where the court has recognized plausible ECOA claims in such circumstances. *See Piotrowski v. Wells Fargo Bank, N.A.*, No. CIV.A. DKC 11-3758, 2013 WL 247549, at *9 (D. Md. Jan. 22, 2013) ("Here again, by virtue of Wells Fargo's alleged failure to provide any response, the complaint states a claim under Subsection 1691(d)(1) as to the Third Modification Request"); *Kaswell v. Wells Fargo Bank, N.A.*, No. CIV.A. RDB-13-2315, 2014 WL 3889183, at *4 (D. Md. Aug. 6, 2014)("As such, the Plaintiff has alleged sufficient facts to infer a plausible claim under § 1691(d)(1) with respect to the creditor's alleged failure to provide notice of action on the application"); *Coulibaly v. J.P. Morgan Chase Bank, N.A., CIV.A. DKC 10-3517, 2011 WL 3476994 (D. Md. Aug. 8, 2011) reconsideration denied,* CIV.A. DKC 10-3517, 2011 WL 6837656 (D. Md. Dec. 28, 2011) (permitting borrower to proceed with § 1691(d)(1) related to certain loan modification applications and § 1691(d)(2) claim related to the notice of adverse

action they received in response to one modification application); *Bourdelais v. J.P. Morgan Chase,* 3:10-CV-670-HEH, 2011 WL 1306311, *9 (E.D. Va. Apr. 1, 2011) (the court accepted "Plaintiffs facts alleged as true and [drew] all reasonable inferences in Plaintiffs favor [and found] that Plaintiffs allegations are sufficient to withstand the present Motion to Dismiss" the plaintiff's ECOA claim); *Estate of Davis v. Wells Fargo Bank,* 633 F.3d 529, 538 (7th Cir. 2011) (recognizing a creditor's offer to modify triggered ECOA's notice provisions); *Boyd v. U.S. Bank, N.A., ex rel. Sasco Aames Mortg. Loan Trust,* Series 2003-1, 10 C 3367, 2011 WL 1374986 (N.D. Ill. Apr. 12, 2011) (finding ECOA notice requirements apply to loan modification requests made over the phone).

31.    The court decisions described in the preceding paragraph are consistent with the position that various authorized agencies have taken applying the ECOA notice and acknowledgement provision of § 1691(d)(1) to applications for loan modifications. *See* HAMP Supplement Directive 09-08 (November 3, 2009); Federal Reserve CA-09-13 (December 4, 2009); and San Francisco Federal Reserve Bank Letter dated December 23, 2009. In addition, the existence of a credit agreement does not deprive consumers of their rights under the Consumer Credit Protection laws. *See Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204 (9th Cir. 2013) (applying ECOA requirements to acceleration of existing loan and cases cited above).

## F.    FACTS RELATED TO THE NAMED PLAINTIFFS

32.     Mr. & Mrs. Pugh reside at the property with their four children.  In March 2012 Mr. Pugh was diagnosed with multiple sclerosis and was soon thereafter unable to continue his vocation as a master electrician since no employer's insurance could provide him coverage in case of an accident on the job. As a result, the family suffered a significant reduction of income and became in default on their obligations.

33.     Mr. Pugh subsequently applied for and received approval for public benefits for him and his children as a means to increase the household income.

34.     Selene acquired the servicing rights to Mr. & Mrs. Pugh's federal related mortgage on the Property at a time when it was in default from Bank of America, NA sometime in early 2014.

35.     Attempting to limit their obligations and concentrate on their mortgage obligation, Mr. & Mrs. Pugh sought to discharge their credit obligations in bankruptcy and have received a discharge.  *See* Case No. 14-23752, U.S. Bankruptcy Court for the District of Maryland (Filed on September 3, 2014).

36.     After having filed for bankruptcy, Mr. & Mrs. Pugh submitted to Selene two complete applications for a loan modification; however, Selene never acknowledged either application. Both applications concerned the Pugh's loan secured by the Property and were intended to change the terms of their existing mortgage without requesting additional credit.

37.     Having discharged their obligations to other creditors and increased the household income by obtaining public assistance, Mr. & Mrs. Pugh stated their

intention in the Bankruptcy Case, to which Selene's counsel received notice, that they had applied for a loan modification but had received no response. See Doc. 22-2 in Case No. 14-23752, U.S. Bankruptcy Court for the District of Maryland.

38.     On or about December 6, 2014, the Mr. and Mrs. Pugh completed a Loss Mitigation application from Selene's website, found at: http://www.selenefinance.com/CustomerAssistance.aspx. They followed the directions for documentation found in Selene's Uniform Borrower Assistance form, and stamped their loan number on every page. They sent this complete request for assistance by certified mail to the Loss Mitigation address found on Selene's website for receipt of such applications. The cost of sending this application was $5.54.

39.     The Request for Assistance was received by Selene on December 10, 2014. Mr. and Mrs. Pugh never received a notice, a response, or even an acknowledgement of their first application for a modification from Selene.

40.     On or about January 6, 2015, since they had heard nothing from Selene, Mr. and Mrs. Pugh completed another Loss Mitigation application. Once more, they followed Selene's requirements for documentation necessary for a complete application as disclosed on its website, and stamped their loan number on every page. They sent their request by certified mail to the same address found on Selene's website for the receipt of such application. The cost of sending this application was $9.22.

41.     Mr. and Mrs. Pugh's second Request for Assistance was received by Selene on January 9, 2015. Once again, Mr. and Mrs. Pugh never received a notice, a response, or acknowledgement from Selene to their second Request for Assistance

42.     On or about February 26, 2015, the Pughs received two letters from Selene. The first solicited options for homeowners who are delinquent on their payments and threatened potential foreclosure. The second was a Notice of Default and Intent to accelerate and threatened foreclosure. Neither letter acknowledged the Pugh's previous applications of December 6, 2014 and January 6, 2015 (described *supra*) for assistance which had gone unanswered and remained unanswered through this following.

43.     As a result of the omission of Selene in responding whatsoever to any of Mr. & Mrs. Pugh's applications for a loan modification, they are entitled to statutory damages available under the claims asserted herein.  In addition, the Pughs have suffered emotional distress from the threats of foreclosure which could have been avoided if Selene had even acknowledged, considered, or responded to their loan modification applications. The Pughs are entitled to recovery of their economic damages of the cost of sending their applications to Selene.

## G.     CLASS DEFINITIONS

44.     This class action is brought by Mr. & Mrs. Pugh on behalf of themselves and a RESPA Class and an ECOA Class.

45.     The RESPA Class includes all borrowers who applied to Selene for loss mitigation on or after January 10, 2014 but Selene did not acknowledge the

receipt of the application in writing within five days to inform the borrower whether the application is complete or not.

46.     The ECOA Class includes all individuals who obtained a loan secured by property located in Maryland whose loans (i) have been serviced by Selene since five years preceding this action; and (ii) have submitted an application to change the terms of their existing mortgage without requesting additional credit; and (iii) were not provided written notice within 30 days of submitting an application regarding the action taken on the application.

### H.     FACTS COMMON TO THE RESPA CLASS & ECOA CLASS

47.     Named Plaintiffs sue on their own behalf and on behalf of two Classes of persons under Fed. Rule. Civ. Pro. 23.

48.     Named Plaintiffs do not know the exact size or identities of either the RESPA Class or the ECOA Class, since most of the information is in the exclusive control of Defendant.  Certain information may be reported by the Defendant to the State of Maryland and may also be part of the public records.  Named Plaintiffs believe that the RESPA Class and ECOA Class each encompass many hundreds of individuals and whose identities can be readily ascertained from Selene's books and records as well as public records.  Therefore, the proposed RESPA Class and ECOA Class is so numerous that joinder of all members of each is impracticable.

49.     Named Plaintiffs believe the amount in controversy equals at least the maximum statutory damages permitted in this matter—i.e. $1,000,000 for the RESPA Class and $500,000 for the ECOA Class.

50.     All members of the RESPA Class and the ECOA Class have been subject to and affected by the same conduct. The claims are based on Selene's standard policies and practices that employ standard tracking of borrower communications, form letters, contracts and uniform loan modification processing requirements.

51.     There are also questions of law and fact that are common to the RESPA Class, and predominate over any questions affecting only individual members of the RESPA Class.  These questions include, but are not limited to the following:

a.      the nature, scope and operation of Selene's obligations to homeowners under its mortgage modification programs related to RESPA;

b.      whether Selene's failure to provide a timely, written acknowledgement of the loss mitigation applications of the members of the RESPA Class within five days of an application is a violation of Selene's duty of good faith and fair dealing to the RESPA Class;

c.      whether Selene's conduct violates the Real Estate Settlement Procedures Act ("RESPA"),  12 U.S.C.A. § 2605  and its implementing regulations at 12 C.F.R. § 1024.41(b)(i)(B);

d.      whether there are more than 50 borrowers who are members of the RESPA Class;

e.      whether Selene should be enjoined from continuing to pursue foreclosure actions, directly or indirectly, concerning RESPA Class members who

have requested loss mitigation but whom have not received acknowledgement within five days of their application from Selene to their loss mitigation applications;

f.          whether Selene's violation of RESPA entitles the RESPA Class to statutory and nominal actual damages related to the transmission of unanswered applications to Selene;

g.          whether Class Counsel should be entitled to the attorney fees, litigation costs, and court costs allowed and claimed in this civil action; and

h.          whether Selene's conduct supports a declaration that Selene has acted with unclean hands by violating its duty under RESPA and Md. Code Regs. 09.03.06.20.

52.          There are also questions of law and fact that are common to the ECOA Class, and predominate over any questions affecting only individual members of the ECOA Class.  These questions include, but are not limited to the following:

a.          the nature, scope and operation of Selene's obligations to homeowners under its mortgage modification programs related to ECOA;

b.          whether Selene's failure to provide a timely, written acknowledgement of the loss mitigation applications of the members of the ECOA Class within thirty days of an application is a violation of Selene's duty of good faith and fair dealing to the ECOA Class;

c.          whether Wells Fargo's conduct violates the Equal Credit Opportunity Act ("ECOA"),   15 U.S.C. § 1691 e*t seq.* and its implementing

regulations;

d.      whether there are more than 50 borrowers who are members of the ECOA Class;

e.      whether Selene should be enjoined from continuing to pursue foreclosure actions, directly or indirectly, concerning ECOA Class members who have requested loss mitigation but whom have not received acknowledgement within five days of their application from Selene to their loss mitigation applications;

f.      whether Selene's violation of ECOA entitles the ECOA Class to statutory damages and nominal actual damages related to the transmission of unanswered applications to Selene;

g.      whether Class Counsel should be entitled to the attorney fees, litigation costs, and court costs allowed and claimed in this civil action; and

h.      whether Selene's conduct supports a declaration that Selene has acted with unclean hands by violating its duty under ECOA and Md. Code Regs. 09.03.06.20.

53.      The claims of the Named Plaintiffs are typical of the claims of both the ECOA Class and the RESPA Class and do not conflict with the interests of any other members of either class because the Named Plaintiffs and the other members of the RESPA Class and ECOA Class were subject to the same conduct, same practices and procedures by Selene, and were met with the same absence of any written response to applications for a change in mortgage terms without an

extension of additional advances and/or subject to or threatened with foreclosure before a modification had been acknowledged in writing or even considered.

54. Named Plaintiffs are similarly situated with and has suffered similar damages as the other members of the RESPA Class and ECOA Class as described in ¶¶ 5, 38, 40, 43 above.

55. The Named Plaintiffs will fairly and adequately represent the interests of the RESPA Class and ECOA Class. Each are committed to the vigorous prosecution of the class claims and has retained attorneys who are qualified to pursue this litigation and have experience in class actions – in particular, consumer protection actions. Named Plaintiffs have no interests adverse to the Class.

56. A class action is superior to other methods for the fast and efficient adjudication of this controversy. A class action regarding the issues in this case does not create any problems of manageability.

57. This putative class action meets all of the requirements of Fed. Rule. Civ. Pro. 23.

58. Selene has acted or refused to act on grounds that apply generally to the RESPA Class and ECOA Class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

59. It would not be economically feasible for each of the individual RESPA Class or ECOA Class members to maintain similar claims since many of them have already suffered financial setbacks and wish to conserve their resources

wherever possible toward preserving their homes through appropriate loss mitigation and/or loan modifications.

60.     The statutory damages of each individual RESPA Class and ECOA Class Member is defined by statute and can be calculated using simple math.

61.     Failure to join the claims of each individual claimant into class claims would lead to duplicate claims/litigation involving the same issues and facts, excessive costs and fees, burdens and potentially inconsistent outcomes.

62.     The common issues set forth above predominate and asserting the claims on a class basis is superior to the alternative of individual actions.

63.     The RESPA Class and ECOA Class had no reason to know of the true illegal nature of the illegal acts of the Defendant concerning the responses to their mortgage loan modification requests since the Defendant routinely omits or misrepresents certain required information from the RESPA Class and ECOA Class members concerning the status of the hundreds of modification requests made to it during the class periods governing each class.

64.     This case is one of those rare instances where circumstances external to the conduct of the RESPA Class and ECOA Class which warrant a finding that it would be unconscionable to enforce the various federal limitations periods against each class since such an act would create a gross injustice of allowing the Defendant to be wrongfully and unjustly enriched to the detriment of each class.

65.     This matter is an extraordinary circumstance at the core of the current economic troubles related to the slumping housing environment that is beyond the

control of the RESPA Class, ECOA Class, and Named Plaintiffs who trusted that the Selene as a so-called licensed mortgage professional would comply with the law. Because the Defendant misrepresented that their acts were authorized by the government, the Class had no reason to investigate further on their own.

## COUNT I
## VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT ("RESPA"), 12 U.S.C.A. § 2605, 12 C.F.R. § 1024.41
### (On behalf of the Named Plaintiffs Individually and on behalf of the RESPA Class)

66.     Named Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

67.     The Named Plaintiffs and RESPA Class members are "borrowers" entitled to the protections codified at 12 U.S.C.A. § 2605 and 12 C.F.R. § 1024.41.

68.     Selene is a mortgage servicer subject to the mandatory requirements of 12 U.S.C.A. § 2605 and 12 C.F.R. § 1024.41.

69.     Selene had duty of care under 12 C.F.R. § 1024.41(b)(i)(B) of Regulation X to (i) acknowledge in writing the loss mitigation applications of the Named Plaintiffs and RESPA Class Members within five days of receipt; and if the application was incomplete (ii) to identify what specific information was necessary from the Named Plaintiffs and RESPA Class Members to complete the application.

70.     Selene did not timely acknowledge the Named Plaintiffs' and RESPA Class Members' applications for loss mitigation pursuant to 12 C.F.R. § 1024.41(b)(i)(B).

71.     Selene did not timely identify what, if any information was necessary from the  Named Plaintiffs' and RESPA Class Members' applications to complete their loss mitigation applications pursuant to 12 C.F.R. § 1024.41(b)(i)(B).

72.     Upon information and belief, based upon the experiences of the Named Plaintiffs and the following public facts and allegations, Selene has a pattern and practice of noncompliance with the requirements of 12 U.S.C.A. § 2605 for borrowers like the Named Plaintiffs and RESPA Class Members:

a.     An amended complaint which claimed Selene did not respond to a borrower's inquiry in *Doran v. Selene Fin., LP*, No. 12-CV-886 SRN/FLN, 2013 WL 53840, at *6 (D. Minn. Jan. 3, 2013)(judgment on the pleadings was granted however because the borrower had not pled any actual damages and was not seeking RESPA statutory damages).

b.     A complaint which claimed Selene only partially responded to a borrower's inquiry in *Korman v. Gray*, No. 13-80031-CIV, 2013 WL 6002211, at *6 (S.D. Fla. Nov. 12, 2013)(dismissed without prejudice to permit the borrower to plead actual damages and losses).

c.     A complaint which claims that Selene never acknowledged or responded to a borrower inquiry mailed to it, provided to its litigation manager and state counsel, and also presented to it as a deposition exhibit for its corporate designee in *Uwansc v. Selene Finance LP*, No. 1:15-cv-630-GLR (removed to U.S.D.C. Md. on March 6, 2015).

d.     A complaint in which a borrower claims Selene failed to timely

respond to two borrower inquiries in the Fall of 2014 in *McCleary v. DLJ Mortgage Capital, Inc.*, No. 1:!5-cv-98-WS-C (U.S.D.C. Al.)(filed Feb. 25, 2015).

e. A complaint in which a borrower claims that Selene has not timely processed a completed loan modification submitted after January 10, 2014 and insteaded as accellerated the loan and threatened foreclosure in *Muldrow v. Taylor Bean & Whitaker Mort. Corp, et al*., No. 2:15-cv-401-AKK (U.S.D.C. Al.)(filed March 9, 2015).

73. Each of the Named Plaintiffs and each RESPA Class member suffered nominal damages of no less than $10.00 to take the time to organize and send each of their application(s) to actual damages in the cost of delivering their applications to Selene.

WHEREFORE, pursuant to 12 U.S.C.A. § 2605(f)(2) Named Plaintiffs and RESPA Class members respectfully requests the Court to enter judgment in favor of Named Plaintiffs and RESPA Class against Defendant for its violations of 12 U.S.C.A. § 2605 and implementing regulations (including 12 C.F.R. § 1024.41(b)(i)(B)) in the sum of their actual and nominal damages incurred in sending their loss mitigation applications to the Defendant, statutory damages in the sum of $2,000 per RESPA Class member not to exceed $1,000,000, costs and attorney's fees incurred by Named Plaintiffs and RESPA Class members; and grant Named Plaintiffs such other and further relief as this court finds necessary and proper.

## COUNT II
## VIOLATION OF THE EQUAL CREDIT
## OPPORTUNITY ACT (15 U.S.C. §1691(d))

**(On behalf of the Named Plaintiffs Individually and
on behalf of the ECOA Class)**

74.     Named Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

75.     Mr. & Mrs. Pugh and the ECOA Class are "applicants" as governed by ECOA, 15 U.S.C §1691a(b).

76.     Selene is a "creditor" as governed and defined by ECOA, 15 U.S.C. §1691(a)(e) at all times relevant hereto.

77.     15 U.S.C §1691(d)(1) provides that "within thirty days…after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application."

78.     The accompanying Regulation B, issued by the Board of Governors of the Federal Reserve System pursuant to ECOA, further provides: "A creditor shall notify an applicant of action taken within…30 days after receiving a completed application concerning the creditor's approval of, counteroffer to, or adverse action on the application." 12 C.F.R §202.9(a)(1)(i).

79.     The term "credit" means the right granted by a debtor to defer payment of a debt or to incur debts and defer its payment…and defer payment thereof. 15 U.S.C. § 1691a (d); 12 C.F.R. §202.2(j).

80.     The applications for modifications of their loan terms by the Named Plaintiffs and ECOA Class members were applications for "credit" as defined by 15 U.S.C. § 1691a(d) and 12 C.F.R. §202.2(j).

81.     Named Plaintiffs and ECOA Class Members provided Selene with completed applications for credit.

82.     Selene failed to (i) acknowledge the Named Plaintiffs' and ECOA Class members' loan modification applications in writing within 30 days or (ii) to even consider the applications within thirty days of receipt.   As a result Selene acted in bad faith.

83.     Instead, Selene grossly ignored its responsibility to respond to Mr. & Mrs. Pugh and the ECOA Class members' loss mitigation requests as proscribed in Md. Code Regs. 09.03.06.20 and related federal guidance and standards described herein, and proceeded to threaten or engage in illegal foreclosure actions.

84.     In failing to evaluate the ECOA Class members' applications for credit in a manner required by the federal and state regulations (including Md. Code Regs. 09.03.06.20), Selene effectively denied the ECOA Class members credit. *Piotrowski v. Wells Fargo Bank, N.A.*, No. CIV.A. DKC 11-3758, 2013 WL 247549, at *9 (D. Md. Jan. 22, 2013)("Failing to act on an application for credit is a *de facto* denial").

85.     The above failure of Selene to notify and acknowledge in writing to the ECOA Class and Named Plaintiffs within thirty days from receipt of their completed application for credit as mandated by 15 U.S.C §1691(d)(1) and 12 C.F.R §202.9(a)(1)(i) was a substantive violation of ECOA.

86.     As a result of the above ECOA violations, the Named Plaintiffs and ECOA Class has suffered substantial actual damages in the following:

a.    the loss of the ECOA Class' rights to explain or quickly rectify and address any errors or problems in their applications for credit;

b.    the assessment of extra fees and charges by Selene that accrued due to its delays in responding the Plaintiffs Class' requests for credit;

c.    the loss of the credit itself; and

d.    frustration, anger, humiliation, fear, embarrassment and other emotional and mental anguish.

87.    As a result of the above alleged ECOA violations, Selene is liable to the Named Plaintiffs and the Plaintiff Class for actual damages pursuant to 15 U.S.C. §1691(e)(a), for punitive damages against Wells Fargo pursuant to 15 U.S.C. §1691e(b) and for attorneys fees and costs pursuant to 15 U.S.C. §1691(e)(d) and 12 C.F.R. §202.16(b).

WHEREFORE, Named Plaintiffs on behalf of the ECOA Class pray this Court to award the following relief against Selene for its violations of ECOA:

A.  The Court certify the Class and appoint the Named Plaintiffs as class representative and their counsel as Class Counsel;

B.  Actual damages as described in ¶¶ 5, 38, 40, 43 above in a sum of no less than $10 per ECOA Class Member pursuant to 15 U.S.C. §1691 (e)(a).

C.  Punitive Damages in the amount of $500,000 against Selene pursuant to 15 U.S.C. §1691e(b).

D.  Attorneys fees and costs pursuant to 15 U.S.C. § 1691e (d).

E. The ECOA Class members and Named Plaintiffs are also entitled to equitable relief pursuant to 15 U.S.C. § 1691e (c) and Fed.R.Civ.P. 23 against Selene and asks this Court to: (i) enter an Order declaring that Selene's conduct is a violation of ECOA and demonstrates unclean hands, insofar as it failed to provide notice to Named Plaintiffs and the ECOA Class members of its actions on their applications for a modification or change in credit within thirty day from receipt of the Class' applications for credit to modify their mortgage loans; and (ii) require delivery of ECOA Complaint notices in all future instances.

Respectfully Submitted,

_____*//ss// Phillip Robinson*_____
Phillip R. Robinson
Consumer Law Center LLC
8737 Colesville Road, Suite 307
Silver Spring, MD  20910
Phone:    (410) 645-7122
          (301) 637-6270
Email: phillip@marylandconsumer.com
*Attorneys for Named Plaintiffs*